Pritsker v. American General Life Insurance Company. Good morning. Good morning. May it please the court, I'm Robert Pritsker-Proce. I'm hoping my briefs successfully addressed statute sublimation tolling issues before you. So, if I may, in my few minutes, I'd like only to comment on something that I find extremely perplexing. That is, that the suggestion by the court below and defendant, that defendant owed me no particular duty, as in heck, let's just knowingly sponsor a Ponzi schemer like Madoff on our platform of investment choices. It's exclusively Pritsker's problem if he invests in that fund. It was even said that I was buying a Ford. Everyone knows a Ford, so you're on your own, mister. I note Ford has one heck of a warranty, but apparently defendant need have none. Not only is it understood in the variable annuity world and have books been written on the subject that insurers perform extensive due diligence on funds they wish to sponsor for investment. But that has to be the case, because the IRS, given its investor control doctrine, that then justifies tax deferral accrual of gains on a variable annuity, prohibits variable annuity contract holders from contacting the sponsored funds. In an attempt to learn more about those funds affairs. Indeed, the closing sentence in every defendant's, every covering letter, accompanying a fund's letter to me, warns in bold face and is underlined, please do not contact the fund directly. If the pivotal, critical, and minimum guidelines that defendant established for fraud, for a fund's admission and retention on its platform is not emblematic of a considerable duty that was owed to me, what could possibly explain defendants establishing those threshold standards? While a mountainous evidence that SSR did not meet those standards is a subject for trial. That SSR was on the platform at all would seem to say one thing. It just had to be an inside job. That's frightening. Could it be that defendants ignoring SSR's gross deficiencies in meeting its criteria and minimum guidelines was excusable neglect of defendant's duty to me? As with rule 10b-5 for registered securities, and given that SECV variable and annuity life insurance company held variable and annuities to be securities. Since defendant repeatedly told me it had performed thorough due diligence on SSR before I invested. And that was a misstatement. Did defendant not have the subsequent duty, as opposed to its silence, to speak in order to make the misstatement not misleading? It seems to me the 75 year old unsophisticated investor retiree who had a plan to leave his wife and 20 year old twin boys, yes, not my grandchildren, his life savings, that the nature of defendant's duty to me was far, far more than just to be a pass through for my investments and collect $100,000 in fees as middle man. Juggernaut AIG's superior reputation, at least in January 2008 when I invested, exclusively situated position to perform due diligence, superior knowledge, and control over the funds its 100% wholly owned insurer chose to sponsor, signaled to me I could very comfortably rely on defendants having done its due diligence. Not only do the Connecticut Insurance Department regulations and bulletins articulate a fiduciary duty, owed to retirees who invest in variable annuities, but the many cases I've read would seem to conclude that defendant owed me nothing less than that fiduciary duty. Thanks for allowing me to reflect on the duties I believe were extant between myself and defendant. Thank you very much. We'll hear from the Appley. Thank you, may it please the court, I'm Jason Richardson for the Appley American General Life Insurance Company. We're asking the court to affirm the district court's decision to dismiss Mr. Pritzker's case on the basis of a Rule 12B6 motion that we filed. And let me put it this way, Your Honor. This is a statute of limitations case. And there's really only two facts that are necessary to put out there for the court to make a resolution on these issues. What is the date of the alleged wrongdoing? And what is the date on which Mr. Pritzker filed his lawsuit? And those dates are undisputed. Mr. Pritzker purchased a variable annuity from my client on January 26, 2008. He filed his complaint over seven years later, on May 4, 2015. The longest statute of limitations that's applicable in this case is six years. And again, the time that elapsed here is seven years. It's worth noting that the particular limitation statutes, as applied, are actually statutes of repose. And that's important, because it means that delayed discovery, or late discovery by the plaintiff on the accrual of his causes of action won't extend the period for him to file those claims. But we don't actually need to go there, because, maybe let me put it this way. It's often said in the industry that variable annuities are frequently sold, but are rarely bought. And what I mean by that is, it's not often when someone comes to the annuity company door, knocks on it, says, I would like to purchase a variable annuity, please, especially a very rare, exotic one that offers you an opportunity to invest in a hedge fund, fund of funds. Can I have one of those, please? Unheard of, but that's what happened here. Mr. Pritzker and a prior investment advisor identified a very specific type of investment, came to my client, asked for an application for it. My client wouldn't sell it to him unless he engaged his own independent investment advisor, a FINRA licensed securities broker dealer, who had to sign off on the application first. And we explain this at length in the brief. There's no allegation in the complaint to suggest that the relationship between my client and Mr. Pritzker was of a fiduciary nature. It was, as numerous Connecticut courts have held, this is a commercial relationship, commercial transaction between an insurer and a customer. You know, the cases that have come up in the briefs that talk about when a Connecticut court might find a fiduciary relationship to exist, I'd call it maybe the wallet rule. In each of those instances, essentially the customer or the investor essentially hands their wallet over to the defendant and says, do with it what you will, I trust you. You can invest the money as needed for my benefit, and that forms the basis of the fiduciary relationship. Here, there's not a single example, whether it's alleged or in the documents attached to the pleadings, that shows the American General at any step of the way ever exercised an iota of discretion over Mr. Pritzker's account. He applied for the annuity, he selected the investments, he selected the amount of money to be invested, and was given all the information about those investments to which he was entitled. Not once did the American General step into the shoes of Mr. Pritzker to make any decision or to make any investment decision to show that a fiduciary relationship exists. And that's important. Absent a fiduciary relationship between the parties, neither of the two tolling doctrines can be applicable here. You can't have a continuing course of conduct tolling argument because that assumes a duty to speak here. Let me say it this way, the only post-purchase misconduct that Mr. Pritzker alleges that my client did was silence. I mean, literally, American General did nothing after the date of purchase. And Mr. Pritzker's allegation is that we should have come forward after the purchase date and warned him that something was amiss or to provide him voluntarily with some sort of investment advice. Absent that fiduciary duty, American General's silence can't be used against it in furtherance of a continuing course of conduct allegation. Fraudulent concealment, same thing. If the basis of the argument is silence, there has to be a fiduciary duty present. Otherwise, there's no duty to speak. There can't be a fraudulent intent to conceal based on the pleadings. So, what that leaves us with is the relationship is governed by the terms of the contract that the parties have, the annuity contract. Plain reading of that contract shows that the types of duties that Mr. Pritzker has alleged to exist here don't exist. There's no ongoing duty to provide investment advice or make corrections to prior investment decisions. That's just not there. So I'm running out of time, 15 seconds. Does the court have any questions for me I could address promptly? Okay. Thank you very much. Mr. Pritzker, you did reserve a minute in rebuttal if you'd like to respond to anything counsel said. Well, I wrote myself silly in the papers I submitted. And if I haven't beaten down all the arguments he made, I can't pull it off in another 50 seconds. So- I just wanted to give you the opportunity. Thank you, no, and I'm just being a little playful about it because I discuss these things ad nauseum and I hope my briefs were compelling and thank you very much for letting me weigh in at all. I'm going to take the matter under advisement. Thank you very much. The final matter on our calendar today is submitted, so we stand adjourned. Court is adjourned.